# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAMES L. THOMAS,** | : |
| *Plaintiff*, | : |
| v. | : **Case No.:** 2:21-cv-1289 |
| **MONTEVERDE'S PRODUCE,** | : |
| *Defendant*. | : **COMPLAINT IN CIVIL ACTION** |

Filed on Behalf of Plaintiff:
James L. Thomas

Counsel of Record for this Party:
**J.P. WARD AND ASSOCIATES, LLC**

Joshua P. Ward
Pa. I.D. No. 320347

J.P. Ward and Associates, LLC
The Rubicon Building
201 South Highland Avenue
Suite 201
Pittsburgh, PA 15206

Telephone: (412) 545-3015
Fax No.: (412) 540-3399
E-mail: jward@jpward.com

1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES L. THOMAS, | : |
| *Plaintiff*, | : |
| v. | : Case No.: 2:21-CV-1289 |
| MONTEVERDE'S PRODUCE, | : |
| *Defendant*. | : |

# COMPLAINT IN CIVIL ACTION

AND NOW, comes Plaintiff, James L. Thomas, by and through the undersigned counsel, J.P. Ward and Associates, LLC and, specifically, Joshua P. Ward, Esquire, who files the within Complaint against Defendant, Monteverde's Produce, of which the following is a statement:

## PARTIES

1. Plaintiff, James L. Thomas (hereinafter "Mr. Thomas"), is an adult individual who currently resides at 243 Calmar drive, Verona, Pennsylvania 15147.

2. Defendant, Monteverde's Produce (hereinafter "MP"), is a Pennsylvania business located at 2 Rutgers Rd, Pittsburgh, Pennsylvania 15205.

## NATURE OF THE ACTION

3. This action arises under the Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C. § 2000e *et seq*, Section 1981 of the Civil Rights Act of 1866 ("Section 1981") 42 U.S.C. § 1981, and the Pennsylvania Human Relations Act ("PHRA") 43, P.S. § 962(c). Mr. Thomas avers that he was discriminated against and harassed on the basis of his race which subsequently resulted in his forced resignation.

2

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over Mr. Thomas's discrimination claims pursuant to 28 U.S.C. § 1331.

5. Mr. Thomas is a resident and citizen of Pennsylvania, a substantial amount of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and the venue is proper pursuant to 25 U.S.C. § 1391(b).

6. Mr. Thomas filed a timely charge with the Pennsylvania Human Relations Commission ("PHRC") and dually filed with the Equal Employment Opportunity Commission ("EEOC") on October 3, 2018. The case number for the PHRC is 201800826 and the case number for the EEOC is 17F201960779.

**PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS**

7. Mr. Thomas began his employment with MP on or about September 12, 2018 as a delivery driver.

8. Mr. Thomas earned $12 per hour in his position at MP. Mr. Thomas's job duties included overnight delivery of produce to restaurants and businesses, including pickup and return.

9. Mr. Thomas is an African American man who has years of experience in delivery driving and was highly qualified to perform the duties of his position at MP.

10. On or about September 14, 2018, Mr. Thomas began his training under the direction of his direct supervisor, William Schenz. (hereinafter "Mr. Schenz")

11. Mr. Schenz is a Caucasian man.

12. Immediately, during this training, Mr. Schenz began making derogatory and inappropriate comments to Mr. Thomas relating to African American women.

13. These comments included Mr. Schenz demoralizing African American women and calling them "b*tches."

14. Additionally, Mr. Schenz asked Mr. Thomas questions such as "Is black p**sy good?" and stated to Mr. Thomas that he wanted to have sex with a black woman along with making the comment to Mr. Thomas that, "the blacker the berry, the sweeter the juice."

15. Upon seeing an African American woman on one of their delivery stops, Mr. Schenz stated to Mr. Thomas, "Look at that black a**, I want to f**k that. "

16. The abovementioned comments shocked and disturbed Mr. Thomas as they were so severe and demoralizing in nature to African Americans.

17. As a result of this harassment toward African Americans, Mr. Thomas requested to another supervisor, Gloria Garofalo (hereinafter "Ms. Garafalo") that his training be discontinued.

18. Mr. Thomas had only been employed at MP for two days, however, as he had been a delivery driver for years and was a highly experienced individual, Mr. Thomas felt as though he could perform the duties of his position, without being further subjected to Mr. Schenz's severely degrading behavior.

19. Ms. Garofalo denied Mr. Thomas's request to complete his training early and following Mr. Thomas's third day working with Mr. Schenz, Mr. Thomas reported the derogatory behavior to Mr. Garofalo.

20. Ms. Garofalo denied all allegations and refused to investigate Mr. Thomas' complaint of racial discrimination.

21. Due to the severe and pervasive nature of the harassment by Mr. Schenz, and the subsequent refusal of authority figures at MP to act in response to this harassment, Mr. Thomas was forced to resign from his position on or about September 19, 2018.

## COUNT I
## RACIAL DISCRIMINATION IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

22. Mr. Thomas incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

23. Under Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII"), it is illegal for an employer to "fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.S. §2000e-2(a)(1).

24. When analyzing a claim of discrimination under Title VII, a plaintiff must show: "(1) she is a member of a protected class; (2) she was qualified for the position she sought to attain or retain; (3) she suffered an adverse employment action; and (4) either similarly-situated non-members of the protected class were treated more favorably or the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Langley v. Merck & Co.*, 186 Fed Appx. 258 (3d Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 36 L. E.D. 29 668 (1973). See also *Makky v. Chertoff*, 542 F.3d 205, 214 (3d Cir. 2008).

25. Pennsylvania courts have determined that an adverse employment action is "an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Jones v. SEPTA*, 796 F.3d 323, 326 (3d Cir. 2015) (quoting *Storey v. Burns Int'l Sec. Serv.,* 390 F.3d 760, 764 (3d Cir. 2004)).

26. Under Title VII, for other employees to be considered "similarly situated," they must have "engaged in the same conduct without such differentiating or mitigating circumstances

5

that would distinguish their conduct or the employer's treatment of them for it," *Morales v. Pnc Bank, N.A.*, 2012 U.S. Dist. LEXIS 143605 *23 (E.D. Pa. 2012).

27. Pennsylvania courts have held that comparison factors for "similarly situated employees" have included "dealing with the same supervisor, having been subject to the same standards, and engaging in the same conduct without differentiating and mitigating circumstances." *Id*.

28. A plaintiff may also satisfy the fourth element by "showing other circumstances that give rise to an inference of unlawful discrimination." *Senador v. Zober Indus.*, 2009 U.S. Dist. LEXIS 36059 *9 (E.D. Pa. 2009).

29. As an African American, Mr. Thomas is a member of a protected class under Title VII.

30. Mr. Thomas was qualified for the position of delivery driver at MP as he had been an experienced delivery driver for years prior.

31. Mr. Thomas suffered various aforementioned adverse employment actions in the form of harassment, embarrassment, and degrading remarks which ultimately forced his resignation.

32. Mr. Thomas's Caucasian co-workers and subordinates were not subjected to the same embarrassment, harassment, and degrading remarks regarding African Americans.

33. MP's harassment of Mr. Thomas, degrading comments made on the basis of his race, and negative treatment so severe, that Mr. Thomas was forced to resign, were undertaken intentionally and with reckless indifference to Mr. Thomas's federally protected right to be free from discrimination in employment decisions based upon his race.

34. As a direct and proximate result of the aforementioned conduct, Mr. Thomas suffered actual damages, including, but not limited to, lost wages, emotional distress all in the past present and future.

WHEREFORE, Plaintiff hereby requests this Honorable Court consider the above and grant relief in his favor. Specifically, Plaintiff requests this Court award him back pay, front pay, any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, costs, and reasonable attorney's fees and costs.

## COUNT II
## HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS
## ACT OF 1964

35. Mr. Thomas incorporates the allegations set forth in the paragraphs above as if fully set forth at length herein.

36. The protections established by Title VII include "protection against a hostile work environment that is abusive to an employee on the basis of his or her race." *Bryant v. Wilkes-Barre Hops., Co., LLC*, 146 F. Supp. 3d 628, 645 (M.D. Pa. 2015).

37. In order to establish a hostile work environment claim, a plaintiff must show that: "(1) he suffered intentional discrimination because of race and/or national origin; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same protected class in that position; and (5) the existence of vicarious or respondeat superior liability." *Senador* at *25 (citing *Cardenas v. Massey*, 269 F.3d 251, 260 (3d Cir. 2001)).

38. The United States Supreme Court "has held that when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that it is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title

VII . . . is violated." *Washington v. Martinez*, 2004 U.S. Dist. LEXIS 4325 at *16 - *17 (E.D. Pa. 2004).

39. Courts have held that "whether an environment is 'hostile' or 'abusive' can be determined only by looking at all of the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Washington* at *17 - *18 (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 22 (1993)).

40. Conditions that create a hostile working environment "may constitute a significant change in benefits and establish the adverse action necessary to state a prima facie case of discrimination." *Washington* at *17.

41. Mr. Schenz is Caucasian and made the offensive comments, regarding African Americans, to Mr. Thomas, who is African American, thereby harassing Mr. Thomas.

42. Mr. Thomas was regularly and pervasively harassed as he was subjected to several derogatory comments about African Americans and was forced to resign his position as a result of the harassment.

43. Mr. Thomas was detrimentally affected by the discrimination as it caused mental anguish, anxiety, damage to Mr. Thomas's professional reputation and ultimately, forced the resignation of his employment.

44. The detrimental effect experienced by Mr. Thomas was reasonable under the circumstances as he was forced out of his position following being severely harassed on the basis of race.

45. Mr. Thomas's supervisors and superiors were agents and/or employees of MP, therefore were acting on behalf of, and under the authority of MP.

46. As a direct and proximate result of the aforementioned conduct, Mr. Thomas suffered actual damages, including, but not limited to, lost wages, benefits, emotional distress, anxiety, loss of reputation, loss of professional opportunities, humiliation and severe inconvenience all in the past present and future.

WHEREFORE, Plaintiff hereby requests this Honorable Court consider the above and grant relief in his favor. Specifically, Plaintiff requests this Court award him back pay, front pay, any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, costs, and reasonable attorney's fees and costs.

## COUNT III
### RACIAL DISCRIMINATION IN VIOLATION OF
### THE PENNSYLVANIA HUMAN RELATIONS ACT

47. Mr. Thomas incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

48. To establish a *prima facie* case of race discrimination under the PHRA, a plaintiff must establish that "(1) the plaintiff is a member of a protected class; (2) the plaintiff suffered an adverse employment action; and (3) the circumstances of the adverse employment action give rise to an inference of discrimination."

49. Protected classes under the PHRA include "race, color, familial status, religious creed, ancestry, age, sex, national origin, handicap or disability, use of guide or support animals because of the blindness, deafness, or physical handicap of the user. . ." 43 P.S. §952(a).

50. Under the PHRA, an "adverse employment action" is "an action by an employer that is serious and tangible enough to alter an employee's compensation terms, conditions, or privileges of employment." *Storey v., Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004).

51. An adverse employment action "encompasses all tangible employment actions such as hiring, firing, failing to promote, reassignment or a decision causing significant change in benefits." *Simmons v. Cmty. Educ. Ctrs.*, 2015 U.S. Dist. LEXIS 51351 *7 (E.D. Pa. 2015).

52. As an African American, Mr. Thomas is a member of the protected class under the PHRA.

53. Mr. Thomas suffered various aforementioned adverse employment actions in the form of harassment, embarrassment, and degrading remarks which ultimately forced his resignation.

54. Mr. Stenz is Caucasian, and was making comments to Mr. Thomas, who is African American, regarding African American women, therefore, the abovementioned adverse employment action gives clear rise to an inference of discrimination on the basis of Mr. Thomas's race.

55. As a direct and proximate result of the aforementioned conduct, Mr. Thomas suffered actual damages, including, but not limited to, lost wages, benefits, emotional distress, anxiety, loss of reputation, loss of professional opportunities, humiliation and severe inconvenience all in the past present and future.

WHEREFORE, Plaintiff hereby requests this Honorable Court consider the above and grant relief in his favor. Specifically, Plaintiff requests this Court award him back pay, front pay, any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, costs, and reasonable attorney's fees and costs.

## COUNT IV
## HOSTILE WORK ENVIRONMENT IN VIOLATION OF
## THE PENNSYLVANIA HUMAN RELATIONS ACT

56. Mr. Thomas incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

57. In order to establish a prima facie case of hostile work environment under the PHRA, the plaintiff must establish "1) that the employee suffered intentional discrimination because of [his protected characteristic], 2) was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of respondeat superior liability." *Mandel v. M & Q Packaging Corp.,* 706 F.3d 157, 167 (3d Cir. 2013).

58. In assessing such a claim, courts are instructed to do so "with respect to the totality of the circumstances." *Sherrod v. Philadelphia Gas Works*, 209 F. Supp. 2d 433, 451-52 (E.D. Pa. 2002).

59. The court must examine "the frequency of the alleged conduct, its severity, whether it was physically threatening or a mere offensive utterance, and whether it unreasonably interfered with the plaintiff's work performance." *Robinson v. Consol Pa. Coal Co., LLC* 425 F. Supp. 3d 433, 446 (W.D. Pa. 2019).

60. In order to succeed on a hostile work environment claim, a plaintiff "must show severe or pervasive misconduct known to him beyond isolated juvenile comments or workplace policies never before challenged as discriminatory." *Kwaning v. Educ. Ctrs. Inc*., 2015 U.S. Dist. LEXIS 152124 *1-2 (E.D. Pa. 2015).

61. Pennsylvania courts have held that "offhand comments and isolated incidents (unless extremely serious) are not sufficient to sustain a hostile work environment claim." *Id*. at *18.

62. Courts have held that "both sporadic and isolated conduct, which is severe enough, can give rise to a hostile work environment, as can less offensive conduct which is sufficiently prevalent." *Tourtellotte v. Eli Lilly & Co*., 636 Fed. Appx. 831, 846 n.27 (3d Cir. 2016).

63. Courts have held that "where a hostile work environment is created by an immediate or successively higher supervisor, a prima facie case of vicarious liability by the employer exists per se." *Gharzouzi v. Northwestern Human Servs. Of Pa.*, 225 F.Supp. 2d 514, 537 (E.D. Pa. 2002).

64. Mr. Thomas was subjected to the comments made regarding African American women, by Mr. Stenz, because Mr. Thomas is African American.

65. Due to the degrading and demoralizing nature of the comments towards African American women, and the frequency with which the comments were made to Mr. Thomas by Mr. Stenz, the harassment Mr. Thomas endured at MP was in fact severe and pervasive.

66. As an African American, the severe and pervasive comments made about African Americans, had a detrimental effect on Mr. Thomas, to the degree that Mr. Thomas was forced to resign from his position at MP.

67. The detrimental effect experienced by Mr. Thomas was reasonable under the circumstances as this discrimination would also effect any reasonable person under the same circumstances.

68. Mr. Thomas's supervisors and superiors were agents and/or employees of MP, therefore were acting on behalf of, and under the authority of MP.

69. As a direct and proximate result of the aforementioned conduct, Mr. Thomas suffered actual damages, including, but not limited to, lost wages, benefits, emotional distress, anxiety, loss of reputation, loss of professional opportunities, humiliation and severe inconvenience all in the past present and future.

WHEREFORE, Plaintiff hereby requests this Honorable Court consider the above and grant relief in his favor. Specifically, Plaintiff requests this Court award him back pay, front pay, any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, costs, and reasonable attorney's fees and costs.

## COUNT V
## RACIAL DISCRIMINATION IN
## VIOLATION OF SECTION 1981

70. Mr. Thomas incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

71. 42 U.S.C. § 1981(a) provides that:

> "[a]ll persons within the jurisdiction of the United States shall have the same right … to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws …as is enjoyed by white citizens."

*Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 460 (1975) (holding that Section 1981 "affords a federal remedy against discrimination in private employment on the basis of race."); see also, *Comcast Corp. v. Natl. Assn. of African Am.-Owned Media*, 140 S. Ct. 1009, 1010 (2020).

72. Thus, Section 1981 prohibits employers from engaging in intentional racial discrimination.

73. Mr. Thomas faced discriminatory treatment in the form of racially discriminatory and derogatory comments made about African Americans.

74. Despite Mr. Thomas's report of the racially harassing and derogatory behavior to Ms. Garofalo, no corrective action was taken, Mr. Thomas was still forced to be trained by Mr. Schenz, the man who made the comments, and his complaint was met with no remedy.

75. MP was aware of the discriminatory conduct occurring in the workplace and failed offer any remedy or disciplinary action and therefore ratified said unlawful behavior.

76. Therefore, MP permitted, condoned, and perpetuated the racially hostile work environment endured by Mr. Thomas, and therefore deprived him of the same right to make and enforce contracts as is enjoyed by white citizens, in violation of the Civil Rights Act of 1866, 42 U.S.C. §1981.

77. MP's actions against Mr. Thomas were undertaken with reckless indifference to Mr. Thomas's federally protected right to make and enforce contracts irrespective of his race.

78. As a result of MP's race discrimination against Mr. Thomas, Mr. Thomas has suffered and continues to suffer damages, including but not limited to lost wages and benefits, anxiety, loss of reputation, lost career opportunities, emotional distress, humiliation and inconvenience.

WHEREFORE, Plaintiff, Mr. Thomas, hereby requests this Honorable Court consider the above and grant relief in his favor. Specifically, Plaintiff requests this Court award him back pay, front pay, any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, and reasonable attorney's fees and costs.

### COUNT VI
### HOSTILE WORK ENVIRONMENT IN
### VIOLATION OF SECTION 1981

79. Mr. Thomas incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

80. To establish a § 1981 claim alleging a hostile work environment based on race, a plaintiff must show that: "(1) the employee suffered intentional discrimination because of his/her race, (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person in like circumstances, and (5) the existence of respondeat superior liability, meaning the employer is responsible." *Castleberry v. STI Group*, 863 F.3d 259, 263 (3d Cir. 2017)

81. Mr. Thomas faced discriminatory treatment in the form of racially insensitive comments and behaviors by his coworkers throughout his employment.

82. The discrimination was severe and pervasive, with intensity and graphic detail.

83. MP was aware of the discriminatory conduct occurring in the workplace and failed offer any remedy or disciplinary action and therefore ratified said unlawful behavior.

84. Therefore, Benshaw permitted, condoned, and perpetuated the racially hostile work environment to which Mr. Thomas was forced to endure, and therefore deprived him of the same right to make and enforce contracts as is enjoyed by white citizens, in violation of the Civil Rights Act of 1866, 42 U.S.C. §1981.

85. MP's actions against Mr. Thomas were undertaken with reckless indifference to Mr. Thomas's federally protected right to make and enforce contracts irrespective of his race.

86. As a result of MP's race discrimination against Mr. Thomas, Mr. Thomas has suffered and continues to suffer damages, including but not limited to lost wages and benefits, anxiety, loss of reputation, lost career opportunities, emotional distress, humiliation and inconvenience.

WHEREFORE, Plaintiff, Mr. Thomas, hereby requests this Honorable Court consider the above and grant relief in his favor. Specifically, Plaintiff requests this Court award him back pay,

front pay, any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, costs, and reasonable attorney's fees and costs.

Respectfully submitted,

**J.P. WARD & ASSOCIATES, LLC**

Date: September 27, 2021           By: */s/ Joshua P. Ward*
                                         Joshua P. Ward (Pa. I.D. No. 320347)
                                         Kyle H. Steenland (Pa. I.D. No. 327786)

J.P. Ward & Associates, LLC
The Rubicon Building
201 South Highland Avenue
Suite 201
Pittsburgh, PA 15206

Counsel for Plaintiff